ROBERT M. SLOAN v. DAVID E. DUNLAP and ELIZABETH DUNLAP, Defendants, FRED W. GOODRICH, Appellant.—No. 39453.—194 S. W. (2d) 32.

Division One, April 8, 1946.

Rehearing Denied, April 30, 1946.

*W. H. H. Piatt* for appellant.

*Luther W. Adamson* and *R. A. Mooneyham* for respondent Robert M. Sloan.

BRADLEY, C.—This cause was to determine title to real estate, an apartment building in Kansas City, and an accounting was involved. The question of title was between plaintiff and defendant Goodrich. The trial court found that title was in plaintiff and cancelled a deed from plaintiff to defendant Goodrich under which de-

fendant Goodrich claimed title. The accounting between plaintiff and defendant Dunlaps was determined, and plaintiff paid into court $734.32 for the Dunlaps, and they delivered 'to plaintiff, day decree was entered, their deed to the property involved, the apartment building, which deed had been held in escrow. Defendant Goodrich appealed.

The principal question involved is the question of title between plaintiff and defendant Goodrich. Hereinafter we refer to respondent plaintiff as plaintiff and to defendant Goodrich as appellant.

July 29, 1938, plaintiff owned an encumbered farm of 468.17 acres in Lawrence County, Missouri; the respondents Dunlaps owned the encumbered apartment building. On said date plaintiff and respondent David E. Dunlap entered into a contract whereby plaintiff was to exchange his equity in the farm for the equity of the Dunlaps in the apartment building. The exchange agreement was to be consummated by October 15, 1938, but such was not accomplished. By the exchange agreement plaintiff and the Dunlaps, in 5 days, were to execute their respective deeds and deliver these, pending consummation, to C. A. Hizer, the third party named in the exchange agreement. As appears, supra, plaintiff, on day decree was entered, received his deed to the apartment building, and it appears in the record that the Dunlaps received plaintiff's deed to the farm, but just when is not clear. Plaintiff was to pay certain interest and taxes on the farm and certain insurance premiums on policies covering and affecting the apartment building. These payments he was not able to make on time and the Dunlaps, by agreement with plaintiff for reimbursement, paid these items and continued their possession of the apartment building, collected rents, paid expenses, deducted for their outlay, etc. Such was the background for the accounting between plaintiff and the Dunlaps and these rents were the background for the accounting to appellant, if it was determined that he had title to the apartment building.

The loan of $15,950 on the apartment building was due April 15, 1939, and the exchange agreement was subject to plaintiff and the Dunlaps being able to refinance this loan. December 28, 1938, plaintiff and the Dunlaps entered into a supplemental agreement, termed an escrow agreement, whereby the deed to the apartment building from the Dunlaps to plaintiff would be placed in escrow pending the refinancing of the mortgage on the apartment building. The refinancing of the apartment building mortgage was consummated, but because of delays in the adjustment of matters between plaintiff and the Dunlaps, and because of the facts giving rise to the troubles between plaintiff and appellant, the apartment building deed of the Dunlaps to plaintiff remained in escrow until delivered to plaintiff in court October 30, 1944, when decree was entered, as stated.

Plaintiff, who resided in Carthage, Missouri, wanted to sell his equity in the apartment building and placed the sale thereof in the hands of Charles T. Altis, a real estate agent in Kansas City. Altis interested appellant, and on January 13, 1941, plaintiff and appellant entered into a 30 days option agreement whereby appellant was to purchase plaintiff's equity in the apartment building for $3,000. The option agreement provided that plaintiff was to furnish appellant a title certificate of the Kansas City Title & Trust Company. Notwithstanding the 30 days limit in the option agreement, plaintiff and his agent, Altis, continued to try to close the deal with appellant for the sale of plaintiff's equity in the apartment building until the latter part of September, 1941.

February 15, 1941, plaintiff, according to his evidence, thought the deal with appellant would be soon closed, and prepared, at Carthage, a deed to the apartment building, bearing date of February 15, 1941; left the name of the grantee blank; showed the consideration as one dollar and other valuable considerations. Plaintiff was in Kansas City February 17, 1941, and saw appellant; and on that day acknowledged the deed in Kansas City, but according to his evidence, did not then deliver it to appellant because he (appellant) was not ready to close the deal. According to plaintiff, he and his agent, Altis, thereafter, many times, endeavored to get appellant to close, but he was never ready. Plaintiff was back in Kansas City on frequent occasions trying to close the deal with appellant, and was there, according to his evidence, subsequent to February 17, but date not given; had the deed with him, but appellant was not ready to close. On that occasion, plaintiff says he was hard put for money and had theretofore borrowed small sums from appellant to pay expenses, and he, according to his evidence, got another small loan from appellant and delivered to him the blank grantee deed to secure the money borrowed, which amounted, including the loan then made, and excluding a small sum repaid, to $17.00.

Appellant retained the blank grantee deed from time of delivery to him until about October 28, 1941, at which time he inserted, or caused to be inserted therein, his name as grantee, and had the deed recorded. It was filed for record October 28, 1941. Appellant claims title to the apartment building under this deed.

Plaintiff testified that he did not authorize appellant to insert his name as grantee in the deed; that he did not deliver the deed with the intention of passing title; that he left the deed with appellant "as a gesture of appreciation for the loan of money to pay my hotel bill and get home. . . . I was leaving it there, and on this occasion and until the first of the week, and he (appellant) said for me to come back and he did not settle with me, and I left it for safe keeping and as evidence of appreciation of him letting me have that money. . . . He accepted the deed and said to be back the

first of the week and we will close the matter up, and I came back on the first of the week. . . . I did not consent to the defendant, ■ Goodrich, placing his name in that deed.''

Altis said the deed was delivered ''shortly after it was made out'', and that plaintiff ''left it there to be put in the safe there, because we were supposed to close the deal two days thereafter.''

Appellant's version of the delivery of the deed was that on February 17, 1941, plaintiff and Altis came to his office with the deed, but that it was not acknowledged, and that they asked about a notary; that he took them down stairs to the office of Sylvester Wells; introduced them to Mrs. Kathryn P. Senceney, a notary; that plaintiff produced the deed and Mrs. Senceney took plaintiff's acknowledgment; that plaintiff said, ''You pay for it; I haven't any money'', and that he (appellant) paid the notary. That when Mrs. Senceney had notarized the deed she said, ''Whose deed is this?'', and that plaintiff ''took the deed from Mrs. Senceney (not a witness) and handed it to me and said, 'Mr. Goodrich, there is your warranty deed.' '' The acknowledgment was dated February 17, 1941.

The court found, in the decree entered, that the deed was delivered to appellant February 15, 1941, but no one placed delivery on the 15th. As stated, appellant said it was on the 17th, and plaintiff and Altis said it was subsequent to the 17th. Appellant said that plaintiff did not, at the time the deed was delivered, or at any time, say that the deed was delivered to him ''for the sole purpose of securing'' a loan of $17. Appellant testified that after the deed was delivered to him, and about February 20, 1941, plaintiff came in and said, ''I haven't had any breakfast'', and I said, ''That is pretty bad for a big man like you not to have the proper steam up this morning'', and I gave him a couple of dollars. ''I think nearly every day he was in to get a little money'' from February 20 to 24. February 25, 1941, appellant wrote plaintiff, acknowledging receipt of money order from plaintiff, amount not stated, but plaintiff said the amount was ''four or five, or six dollars.'' And plaintiff conceded that he later got money from appellant and owed him $17, and during the trial tendered to appellant the $17, plus $3 interest, but the tender was refused. The $20 was deposited with the clerk for the use of appellant. Appellant was not definite as to the amount of money he let plaintiff have after the delivery of the deed, but he did not claim that it exceeded $17. And appellant said that plaintiff did not at any time tell him that he could not put his ''name or anybody else's name'' in the deed as grantee.

Plaintiff claimed that his patience with appellant became exhausted and that he sought to terminate relations as to the deal; that in the latter part of September, 1941, in the presence of his agent, Altis, he wrote appellant a letter telling him that he could not go along with

him any further, and that upon receipt of the letter "he could consider my obligation under the terms of that option had terminated." Appellant denied receiving the letter, but Altis testified that he read the letter at the time it was written; that it was addressed to appellant and that he saw it mailed; that later he was in appellant's office, and talked to him about the letter; that appellant "didn't seem to pay any attention to it"; said "he was going ahead with it" (the deal), but that "he (appellant) set no date for closing the deal", but he said that "when the finance man got back to town he (appellant) would be right in, in the next two or three days."

Altis further testified that he saw appellant several times after the termination letter; "told him that Mr. Sloan had pulled out of it, and that so far as the contract was concerned that he could not hold Mr. Sloan on the option contract any longer, but if he was ready to go through with it I would see what I could do"; that he mentioned "selling the property to other people", and that appellant "made a remark about tying it up. . . . He said he was going to put the deed on record"; that "he was going to put his name in the deed, and put it on record." Altis further testified that he advised appellant "not to put the deed on record", and advised "Mr. Frazier (appellant's attorney) not to let him put it on record." Plaintiff testified that a week or ten days after he wrote the letter terminating the option contract, he called appellant by telephone; told him that he "wanted to come over and see him", and that appellant told him not to come.

Appellant contended that the 30 days *option* agreement whereby he was to purchase the apartment building finally became a *perpetual* agreement, and introduced a paper bearing date of March 5, 1941, signed by plaintiff and witnessed by ▆▆ Altis. The paper reads: "I hereby acknowledge receipt of $10.00 to be deducted from the gross amount of purchase money, as per contract signed between Sloan and Goodrich, and hereby is extended until completed." Also, he introduced a paragraph of plaintiff's petition in a former dismissed cause to determine his interest in the apartment building, and a paragraph in the present petition, as it was prior to amendment by interlineation during what may be termed the pretrial conference, although it was after the opening statements. These paragraphs are practically identical. The paragraph in the present petition reads:

"That thereafter and in the pursuance of said contract the plaintiff, with the full knowledge, approval and consent of the defendants, D. E. Dunlap and Elizabeth Dunlap and their attorney, C. A. Hizer, executed a warranty deed leaving the space for the name of the grantee therein blank and delivered said deed to the defendant, Fred W. Goodrich, for the purpose of being held by him until he had fully completed his contract of purchase hereinafter set forth." The para-

graph was amended at the pretrial conference by striking "until he had fully completed his contract of purchase hereinafter set forth", and inserting in lieu thereof, "until there had been repaid to defendant Goodrich by plaintiff the sum of $17 which the plaintiff had obtained from defendant Goodrich as a personal loan."

Appellant claimed that the reason he had not completed the deal was that plaintiff had not furnished the certificate of title as provided in the option contract. In the brief he says: "The delivery of the deed conveyed to appellant all respondent's (plaintiff's) right and title as of and on the 17th day of February, 1941; and the tender by appellant of $3,000 at the trial July 25, 1944, is a full performance on his part of the option contract as extended, and by it respondent is required to deliver to appellant the certified title and abstract to date, less a deduction from the $3,000 of the loans by appellant to respondent."

The record shows that appellant had the abstract in his possession shortly after the option contract was executed, and then had it back in possession again September 11, 1941, and at no time made any complaint or requirements as to title. The trial ended, except as appears, infra, July 26, 1944, and cause was taken under advisement. August 18, 1944, the trial court sent to counsel a statement containing a kind of a resume of his findings. Among other things therein was the following:

"The contract price for the equity in the property in question was $3,000.00. Defendant Goodrich's interpretation of the situation would have plaintiff Sloan conveying his $3,000.00 equity in the property without receiving any portion of the purchase price, and without any definite time at which the consideration should be paid. On the question of defendant Goodrich's contention that the deal was not closed because plaintiff would not furnish a certificate of title, defendant wrote a number of letters in whch he gave the reasons for not closing the transaction, and in none of those letters, with one exception, did he mention certificate of title. . . . Defendant's own testimony, with that of Altis, Hizer (escrow holder) and plaintiff, together with the facts and circumstances, to my mind, clearly establish the fact that there was no intention on the part of plaintiff to pass title at the time he finally deposited his deed with the defendant Goodrich. It is, therefore, my conclusion that the deed as placed of record is void and of no effect, and should be cancelled."

The record recites that on August 19, 1944, the court found in favor of plaintiff and against defendant Goodrich, but we infer no decree was then entered. The record, however, shows that on August 23, appellant filed motion for a new trial and in arrest; these were overruled August 26. August 30, appellant filed affidavit for appeal, but appeal was not granted. September 8, the court set aside the

1220

order overruling the motion for a new trial and in arrest, and on October 30, 1944, rendered final judgment. October 31, appellant again filed motion for new trial and in arrest. These were overruled and he again filed affidavit for appeal November 9, and appeal was granted.

Appellant makes several separate assignments, but all except one, go to the contention that the evidence does not support the judgmen cancelling the deed on which the controversy was waged. Specifically, appellant says that the court erred in denying his oral motion for a judgment on the pleadings and admissions made in a pretrial effort to ascertain what facts might be agreed upon, and in denying, at the close of the case, an oral motion in the nature of a demurrer to the evidence. Also, complaint is made in the assignments that the court erred in rendering judgment on the petition which appellant says commingled an action in tort with one in contract and misjoined "parties in unrelated substantive matters not in privity."

 No controverted issues were agreed upon in the pretrial conference, and certainly the pleadings are not such as to justify sustaining the motion for judgment on the pleadings. This cause is in equity, and such being so, there was no place for a demurrer to the evidence. Its only effect was to rest the case and submit it to the chancellor for the decision on the merits. Fullerton et al. v. Fullerton et al., 345 Mo. 216, 132 S. W. (2d) 966. And in an equity case we pass on the weight of the evidence on appeal, but give due deference to the chancellor's fact findings on conflicting parol evidence. Reaves et al. v. Pierce (Mo. Sup.), 26 S. W. (2d) 611, l. c. 616, and cases there cited. In the decree entered the court found that when plaintiff delivered the deed to appellant he did so to secure "the sum of money advanced and not otherwise", and that when the deed was delivered it was not plaintiff's intention "to part with the title to said real estate", and that it was not appellant's intention "to receive title." There was ample evidence to support these findings.

 The assignment, not going to the contention that the evidence does not support the judgment, pertains to appellant's claim that the court erred "in entering two judgments and decrees respectively at the May term, August 19 (18), 1944, and at the September term, October 30, 1944." The "two judgments" include the statement sent by the court to counsel on August 18. The statement was not a copy of a judgment and did not purport to be. It merely informed counsel what the finding and judgment would be.

 Appellant says he was deprived of his constitutional rights guaranteed by the 1875 Constitution, Art. 2, Sec. 4, natural rights; Sec. 10, courts shall be open to all; Sec. 30, due process, and guaranteed by the Constitution of the United States, 14th Amendment, due process. In the brief, under the assignment on constitutional

rights, appellant says: "The court entered a judgment, finding and decree on August 18, 1944, against appellant and precluded him from further or other participation in the case, and 73 days later, to wit, October 30, 1944, entered another judgment, finding and decree against appellant, at which proceedings he was not present, but precluded, and found in that decree that the appellant should be assessed with all the costs in the case of the respondent (plaintiff) against the defendants Dunlaps, their cross petition and their findings, and that execution issue against him therefor."

Appellant was not "precluded from further or other participation in the case" after August 18. He filed motion for rehearing August 19, and motion in arrest August 23. These were overruled, and the order overruling was set aside, as stated, September 8. October 30, when judgment was entered appellant was not present in person or by attorney, but he filed motion for new trial and in arrest October 31. Mr. Piatt, appellant's counsel, argued the motions November 8. At the argument something was said about some proceedings in the case on October 30. It seems that Mr. Adamson, plaintiff's counsel, planned to have the decree ready for entry on Saturday, October 28, and so notified Mr. Piatt, but the decree was not entered then. On the 28th, Adamson called Mr. Piatt; told him the decree would be entered Monday, October 30; "that there would be some changes" in the decree, having reference to a copy of the proposed decree delivered to Mr. Piatt October 27, but that the changes "would be inconsequential", and that he would be served with a copy. Mr. Piatt told Adamson that if he got "the matter to me Monday morning (October 30) that would be all right."

The "changes" in the proposed decree, copy of which was delivered to Mr. Piatt, pertained to the accounting between plaintiff and the Dunlaps, but the court "raised the question as to whether this entry should be made without showing Mr. Piatt and Mr. Goodrich present." Mr. Adamson "told the court about the situation." The court then suggested "that inasmuch as Sloan and Dunlap had agreed on the amount due, under the accounting, that the judgment should not be longer deferred; and that part of the judgment entry was changed, the court having heard some evidence on it first, and it was to ▋▋ make the evidence conform to the judgment entry, and it was on that that the report of the accountant was put in evidence."

Appellant was not harmed by what occurred on October 30, day decree was entered in his absence. The court found that he had no title to the apartment building, hence the accounting between plaintiff and the Dunlaps in no way affected his rights. If he prevailed on this appeal, then, and only then would he be entitled to an accounting and what was done between plaintiff and the Dunlaps would be no **bar.**

1222

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.