**David FRANCOIS, Plaintiff-Appellant,**

v.

**Lillian M. JONES, Executrix of the Estate of Joseph S. Kerry, Deceased (Substituted Party Defendant in Place and Stead of Joseph S. Kerry, Deceased), Defendant-Respondent,**

and

**Oscar Session and Violet Session, Intervenors-Defendants-Respondents,**

and

**Charles Session and Carol Session, Defendants-Respondents.**

**No. 37879.**

Missouri Court of Appeals, St. Louis District, Division Two.

Nov. 1, 1977.

Motion for Rehearing and/or Transfer Denied Dec. 16, 1977.

Francis L. Ruppert, Ruppert & Schlueter, Clayton, for plaintiff-appellant.

James F. Gunn, Bernard A. Ruthmeyer, St. Louis, for defendant-respondent.

STEWART, Judge.

This is a court tried proceeding in which defendants prevailed. It arises out of a sales contract, dated January 16, 1968, whereby Joseph S. Kerry agreed to sell to David Francois, plaintiff, certain real estate in St. Louis County. The closing date was February 20, 1968. The contract was never consummated. Plaintiff sued Joseph S. Kerry, seeking specific performance of the contract. Oscar and Violet Session, his wife, alleging that they were the owners of the real estate, were granted leave to intervene. Upon the death of Joseph S. Kerry, Lillian M. Jones, Executrix of the estate of Joseph S. Kerry was substituted as a party defendant. We will refer to the latter defendant and to Joseph S. Kerry as Kerry. The petition upon which the case was tried was in three counts. In the first count

plaintiff sought specific performance of the contract, praying for conveyance of the real estate to plaintiff by the estate of Kerry. The second count sought damages against Kerry's estate for breach of the sales contract. The third count was directed toward the intervenors, Oscar and Violet Session and additional parties defendant Charles Session and Carol Session, his wife, charging that they "conspired together" to induce Kerry to breach the contract to sell the real property. Plaintiff sought actual and punitive damages and the conveyance of the real estate which was alleged to be titled in the names of Charles Session and Carol Session.

At the close of plaintiff's evidence and after submission of memoranda by the parties the trial court sustained the defendants' motions for "directed verdict." We affirm.

■ We first consider the scope and the nature of our review. This was a court tried case involving legal and equitable causes of action and will be reviewed as cases in equity. Rule 73.01, subd. 2(a). "[A] motion for directed verdict like our old demurrer to the evidence has no place in an equity case." *Moser v. Williams,* 443 S.W.2d 212, 215[1] (Mo.App.1969). "Its only effect was to rest the case and submit it to the chancellor on the merits." *Sloan v. Dunlap,* 354 Mo. 1211, 194 S.W.2d 32, 37[3] (1946). *Our review is governed by Rule 73.01 and the judgment of the trial court will be sustained* "[U]nless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo.1976).

We view the evidence most favorably to the result reached by the trial court. *Stark v. Stark,* 539 S.W.2d 779, 781[1] (Mo.App. 1976).

In March of 1967, Kerry signed an exclusive listing contract with Maroon Realty Company for the sale of a parcel of real estate owned by Kerry, located at Lemay Ferry and Butler Hill Roads, in St. Louis County. The listing price was $47,500.00.

This property had formerly been owned by Oscar and Violet Session. Plaintiff had submitted an offer to Oscar Session to purchase the subject real estate for $58,000.00 [1] in 1966. When plaintiff learned 'that the Oscar Sessions no longer owned the property the matter was dropped.

On January 16, 1968, plaintiff contacted Frank Maroon (Maroon) of Maroon Realty Company and offered $35,000.00 for the property. Maroon prepared a sales contract on a printed form. The contract was signed by Maroon, as agent for Kerry, and by plaintiff, who gave Maroon a check for $500.00 as earnest money. The contract called for additional earnest money in the sum of $1,000.00 to be paid on January 18, 1968, with closing on February 20, 1968. No specific hour was designated for the closing. Maroon, on the same day, took the contract to Kerry's home. He asked Kerry to sign the contract advising him that he ought to accept the offer. Maroon did not advise Kerry that he had a right to make a counter offer or that he might be able to get more money for the property. Kerry signed the contract. Plaintiff did not make the additional earnest money payment on January 18, 1968, but Maroon accepted plaintiff's personal check for $1,000.00 on January 20, 1968.

Some time before February 20, 1968, Kerry told Maroon that "he felt that he didn't want to go through with the [contract], that some one told him he could get more money for the property." Maroon told plaintiff that he was having trouble getting Kerry to close. Maroon, who had placed the insurance and paid the taxes for Kerry, did not draw a closing statement and did not prepare a warranty deed. He testified that this was not done because he did not get the title from Kerry. By the terms of the contract, plaintiff authorized Maroon to run the title.

1. Plaintiff testified that the offer required seller to make $30,000 in repairs to the improvements which was delineated in an addendum to the contract. The contract was in evidence, but no addendum was attached.

Plaintiff appeared at Maroon's office on the morning of February 20th, the date set for closing. Mr. Kerry was not present. Plaintiff did not tender any money either in cash or its equivalent, a cashier's check, on the closing date. "He said he'd make arrangements to provide the money to close this transaction."

Before plaintiff left that afternoon, Maroon pasted a jurat to the reverse side of the sales contract and gave it to him. The following day, plaintiff had the sales contract recorded.

Some time after the contract was recorded Maroon took plaintiff to visit Kerry in the hospital. Kerry showed plaintiff a contract which he had submitted to Oscar Session for the subject property calling for a consideration of $58,000.00. Kerry did not say whether he would or would not close the sale under the contract for $35,000.00.

On December 3, 1969, Kerry conveyed the property to Charles Session and Carol Session, his wife, by warranty deed. On the same date, Mr. and Mrs. Charles Session executed a deed of trust on the property to secure a note in the sum of $42,500.00. Other facts will be developed where germane to the issue under discussion.

At the close of plaintiff's case, the court, upon motion, dismissed Count III of plaintiff's petition. The parties were granted time to file memoranda with respect to Counts I and II. Upon final submission, the court sustained defendants' motions to dismiss Counts I and II. The court in its order stated:

"The above order is based on the Courts finding that Frank Maroon, by his own testimony, attempted to act as 'agent' for both parties to a real estate sales contract without disclosing that fact to his principal. Accordingly any alleged sales contract is void. See *Fine v. Stiers,* 326 S.W.2d 392, l.c. 398, *State v. Edwards,* 345 Mo. 929, 137 S.W.2d 447, l.c. 449."

Plaintiff's primary attack on the judgment of the trial court is directed at the court's finding that Maroon attempted to act as agent for both parties without disclosing that fact to his principal. A judgment in a court tried case will not be disturbed if there is any ground upon which it can be sustained even if the trial court should give a wrong or insufficient reason for its decision. *Edgar v. Fitzpatrick,* 377 S.W.2d 314 (Mo.1964).

The proposition of law that is most clearly evoked by the facts of this case is enunciated in *Robb v. N. W. Electric Power Cooperative,* 297 S.W.2d 385, 388[4] (Mo.1957):

Where the right is executory, and the instrument securing and evidencing it is materially altered by one having a beneficial interest therein, that instrument, as evidence of the right therein described, is destroyed, but where the instrument merely evidences an executed transaction and is a memorial of it, the rights which vested by virtue of that transaction in the person who then materially alters the instrument are not thereby destroyed or divested, although the material alteration may destroy the instrument as to any executory features therein.

The addition of a jurat to an instrument to permit the instrument to be recorded, thereby placing a cloud upon a title, has been held to be a material alteration. *Kempf v. Phillips Pipe Line Company,* 61 S.W.2d 422, 424 (Mo.App.1933).[2]

In the case before us there is no evidence to warrant a finding that a jurat was intended to be placed upon the contract of sale. There was no place provided on the printed contract for a jurat. On the date of closing, February 20, without the knowledge or consent of Kerry, Maroon, a person having a financial interest in the contract, pasted a form of jurat on the back of the contract of sale. The acknowledgement was dated back to January 16, 1967. It was placed on the contract so that plaintiff could record it and thus cloud the title.

The material alteration was made in the executory contract to the detriment of Kerry, thus, the contract was rendered void. *Robb, supra.*

**2.** This case is criticized in *Robb v. N. W. Electric Power Cooperative* on other grounds.

There is in this case the question of whether plaintiff tendered performance, whether the parties, Session, conspired to induce defendant to breach the contract of sale and whether Maroon acted in a dual capacity of agent without revealing his role to Kerry, his principal. Inasmuch as we have determined that the material alteration voided the contract, we need not pursue the other issues.

The judgment of the trial court was for the proper parties.

The judgment is affirmed.

McMILLIAN, P. J., and REINHARD, J., concur.