JACOBS *v.* SHARP.

4-8294                                    202 S. W. 2d 964

Opinion delivered June 16, 1947.

*W. B. Alexander,* for appellant.

*Guy E. Williams,* Attorney General, *Cleveland Holland,* Assistant Attorney General, *Clifton Wade* and *Rose, Dobyns, Meek & House,* for appellee.

McHANEY, Justice. Appellant, a citizen and taxpayer of the State, brought this action against appellees who are the members of the Board of Trustees of the University of Arkansas to enjoin them from issuing $400,000 of bonds for the purpose of aiding in the con-

struction of two dormitories on the campus of the University of Arkansas, as authorized by Act No. 62 of 1947.

The complaint alleged that appellees had adopted plans and specifications for the construction on the campus of the University of two dormitories, one for men and one for women, at a cost of $600,000 each, or a total of $1,200,000; that to finance the cost of construction, they plan to use $800,000 of State funds appropriated for the University by the General Assembly, and to provide $400,000 additional by a bond issue of that amount payable solely from and secured by a pledge of revenues to accrue from rentals of the rooms of the dormitories to be paid by the students. A copy of a resolution adopted by the Board and hereinafter referred to, evidencing this purpose, was made part of the complaint. It was also alleged that, under Amendment No. 20 to the Constitution, the Board is prohibited from issuing bonds pledging the faith and credit of the State or any of its revenues, with certain exceptions, not material here, except when approved by a vote of the electors at an election; that the revenues from the dormitories to be pledged will be revenues of the State; and that the proposed bonds have not been approved by a vote of the electors, and that, therefore, the bonds will be issued contrary to said amendment and void.

To this complaint a demurrer was interposed, sustained, and, appellant declining to plead further, the complaint was dismissed. This appeal followed.

Section 1 of Act No. 62 of 1947 authorized the Board of Trustees of the University of Arkansas, and also several other educational institutions of the State, "as a public agency of the State of Arkansas to (a) construct buildings or structures which are of the character known as self-liquidating projects in that they are financed in whole or in part from revenues of the project collected for that purpose—including, but not limited to, dormitories . . . " The Board is authorized to enter into contracts to borrow all or any part of the funds that it may determine will be required to finance such projects

and to issue notes or bonds "with a specific pledge, for the payment of the principal and interest thereof, only of the gross tolls, fees, rents," etc., "to be derived as income from the project; provided, such bonds or notes shall be obligations only of such Board of Trustees, and in no event shall they be considered a debt for which the faith and credit of the State of Arkansas or any of its revenues are pledged." The members of the Board are exempted from personal liability, except for action "with a corrupt intent."

Section 2 of said Act relates to the broad powers of the Board in fixing maturities, the form of the bonds, terms of redemption, the rate of interest not to exceed 4 per cent. per annum, agreements as to maintenance of maximum percentage of occupancy of such dormitories, fixing of minimum rates for occupancy to provide for payment of said bonds and interest and other details with this proviso: "provided, no mortgage or other lien shall be executed on any of the lands or buildings belonging to the State of Arkansas." Power is conferred on the Board "to fix rents, tolls, fees and other charges to be imposed in connection with any such building or service to be thereby furnished and to make and enforce rules and regulations with reference to the use thereof as it may deem desirable for the welfare of the institution or its student body." Other sections of said Act are not relevant here.

The Legislature, at the same 1947 session, passed Act 377, making an appropriation of $1,000,000 from the University of Arkansas Fund for each of the two fiscal years ending June 30, 1948 and 1949, "For construction and equipment of new buildings, additions, repairs and other permanent improvements, retirement of bonded indebtedness, labor and other necessary expenses incidental to the above for the benefit of the University and all of its branches."

The Board, on April 30, 1947, adopted a resolution in conformity with said Act 62, authorizing the issuance and sale of $400,000 of negotiable dormitory revenue

bonds at not less than par and accrued interest, to be dated as near the date of sale as possible, to bear interest at a rate not to exceed 3 per cent. per annum, payable semi-annually, and to mature serially in the years 1948 to 1973 inclusive. It further provided: ''The bonds shall be obligations only of the Board of Trustees, payable from and secured solely by a specific pledge of the revenues to be derived from rentals of the rooms of the two dormitories to be paid by the students who occupy them, which shall be plainly recited on the face of the bonds. In no event shall they be considered a debt for which the faith and credit of the State of Arkansas or any of its revenues are pledged, and no mortgage or lien on the dormitories or any lands or buildings belonging to the State shall be given as security, which also shall be plainly recited on the face of the bonds.''

To reverse the decree appellant contends that the issuance of the bonds, as provided in said Act 62 and the resolution of the Board above set out, will be contrary to Amendment No. 20, which provides, with certain exceptions not relevant here, that ''the State of. Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose.'' Adopted at the November 6, 1934, general election.

It is argued that the bonds proposed to be issued, no matter how worded, will in fact be obligations of the State and will be secured by a pledge of revenues of the State; ''that the effort to justify their issuance under the 'special fund doctrine' as revenue bonds from a self-liquidating project is but an effort to evade the direct limitation placed on the issuance of such bonds by Amendment No. 20.''

We cannot agree with this argument. The State will not issue these bonds and the faith and credit of the State will not be pledged. Only the State is prohibited

from issuing "bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues," except by a majority vote of the electors.

The bonds to be issued will bear none of the indicia of State bonds. They will not be executed by any State official and will not bear the Great Seal of State. They will distinctly state on their face that they will be obligations only of the Board of Trustees, shall be payable from and secured solely by a specific pledge of the revenues to be derived from rentals of the rooms in said dormitories to be paid by the students who occupy them, and "in no event shall they be considered a debt for which the faith and credit of the State of Arkansas or any of its revenues are pledged, and no mortgage or lien on the dormitories or any lands or buildings belonging to the State shall be given as security, which shall also be recited on the face of the bonds." On the contrary, these bonds will be signed in the name of the Board by the Chairman and Secretary of the Board and the seal of the University will be affixed.

Moreover the Board of Trustees is a body politic and corporate, made so by the Act of March 30, 1887. now § 13142 of Pope's Digest, which provides: "Said board is made a body politic and corporate, and shall have all the powers of a corporate body, subject to the Constitution and laws of the State of Arkansas, and possess all the power and authority now possessed by the Board of Trustees of said University under existing laws, and shall make and subscribe an affidavit before entering upon their respective duties, to faithfully, diligently and impartially discharge the duties of their office." Whether this makes the Board a legal entity we do not determine. Act 62 refers to the Board as "a public agency of the State of Arkansas," and empowers it to issue these bonds in its own name with all the powers, restrictions, and limitations set out in said Act.

In *Davis* v. *Phipps*, 191 Ark. 298, 85 S. W. 2d 1020, 100 A. L. R. 1110, it was held that bonds issued by the State Board of Education under Act No. 333 of 1935,

which authorized the issuance of bonds to be secured by school district bonds which had been deposited with said Board as security for loans from the revolving loan fund, and which expressly provided that the faith and credit of the State are not pledged, did not violate Amendment No. 20. Also that the pledge of such school district bonds and the interest thereon was not a pledge of "revenues" of the State within said Amendment 20. The late Judge BAKER for the Court there said: "A bond is a written promise to pay money, and we have said, in the foregoing discussion, that the State is not issuing these bonds, and it would not be bound for their payment. Therefore these bonds, which the State Board of Education is about to issue, are not within the prohibited class." And again, it was said: "Finally, it may be suggested that the pledges contemplated by the State Board of Education are not within the forbidden class for another reason; that is, under Amendment No. 20 it would seem that pledges of revenue are forbidden only when such pledges are to secure State bonds. This seems to be in accordance with the language of Amendment No. 20."

Therefore, it appears to us to be certain that the bonds to be issued by the Board of Trustees are not State bonds and that the faith and credit of the State are not pledged. Not being the obligations of the State of Arkansas, Amendment No. 20 has no application to them and is not violated, because the prohibition therein relates only to State bonds.

A number of our cases on this and related subjects are cited and relied on by counsel for both parties. In addition to *Davis* v. *Phipps, supra,* such as *Carpenter* v. *McLeod,* 202 Ark. 359, 150 S. W. 2d 607; *Page* v. *Rodgers,* 199 Ark. 307, 134 S. W. 2d 573: *State ex rel.* v. *State Board of Education,* 195 Ark. 222, 112 S. W. 2d 18; *Jernigan* v. *Harris,* 187 Ark. 705, 62 S. W. 2d 5, and a number of cases citing it; and *City of Harrison* v. *Braswell,* 209 Ark. 1094, 194 S. W. 2d 12, 165 A. L. R. 845. To discuss in detail all these cases herein would be a useless task and we refrain from doing so. None of them are exactly in point

here, but many of them approve bond issues for which the revenues of the projects are pledged as the sole security therefor.

Our conclusion is that the Board of Trustees, appellees, is not prohibited by Amendment No. 20 from issuing the bonds contemplated and the decree is, accordingly, affirmed. An immediate mandate is hereby ordered.

GRIFFIN SMITH, C. J., and McFADDIN, J., concur.