WELLS *v.* STUCK.

4-8794                                               215 S. W. 2d 697

Opinion delivered December 20, 1948.

*Lee Cazort, Jr.,* for appellant.

*Rose, Dobyns, Meek & House,* for appellee.

ROBINS, J. The question presented by this appeal is whether appellees, composing the Board of Trustees of Arkansas State College, in carrying out their plan to erect twelve residences to be rented to members of the college faculty, have the power, in addition to pledging, as security for bonds to be sold to obtain necessary construction funds, net revenues arising from rentals of the contemplated dwellinghouses, to contract with the purchasers of said bonds that, if necessary to prevent a default, the Board will use in payment of said obligations any surplus, above $9,000, in a fund accruing from revenues of certain other buildings heretofore constructed as a ''self-liquidating project'' under the provisions of Act 62 of the General Assembly of Arkansas of 1947. The proposed faculty dwellinghouses are to be built under the authority of the same Act.

Appellant, a citizen and taxpayer of the State of Arkansas, filed in the court below complaint setting forth the plan for issuing the bonds to pay the cost of the dwellinghouses and for securing said bonds, not only by a pledge of the revenues from the proposed buildings, but also by the promise to use, if necessary, the surplus arising from the other previous project. Appellant in his complaint alleged that the contemplated action of appellees was contrary to the provisions of the said Act 62 of 1947; and he asked for an injunction against appellees to prevent them from executing said plan.

To this complaint appellees filed a demurrer, which was sustained by the lower court; and the complaint was dismissed for want of equity. This appeal followed.

The legislative authority to issue the bonds mentioned in the complaint is said to be contained in the following provision of said Act 62 of 1947: ''Section 1. That subject to and in accordance with the terms hereof, the Board of Trustees of the University of Arkansas, Arkansas State Teachers College, Henderson State Teachers College, Arkansas State College, Arkansas

Polytechnic College, Third District Agricultural and Mechanical College, Arkansas Agricultural and Mechanical College, and State Agricultural, Mechanical and Normal College, respectively, is hereby authorized and empowered as a public agency of the State of Arkansas to (a) construct buildings or structures which are of the character known as self-liquidating projects in that they are financed in whole or in part from revenues of the project collected for that purpose, and which the Board deems proper or suitable for the school, including, but not limited to, dormitories, libraries, refectories, and commons, and to purchase sites therefor, if necessary; (b) purchase for such purposes buildings already constructed, and the tracts of land on which they are situated; (c) reconstruct, enlarge, or repair and equip such buildings or structures so constructed or purchased; and (d) purchase and pay the expense of tearing down, removing to the school, reconstructing and equipping houses, buildings, or structures constructed by an agency of the United States or private parties. In connection therewith the Board is hereby authorized and empowered to enter into the necessary contracts for the borrowing of all or any part of the funds that the Board may determine will be required in connection with the financing of the project or projects. In evidence of any such loan of funds the Board of Trustees is authorized and empowered to issue its negotiable interest bearing notes or bonds with a specific pledge, for the payment of the principal and interest thereof, *only of the gross tolls, fees, rents, and other charges, or any part thereof, to be derived as income from the project*; provided, such bonds or notes shall be obligations only of such Board of Trustees, and in no event shall they be considered a debt for which the faith and credit of the State of Arkansas or any of its revenues are pledged. One series of bonds may be issued for more than one project and the revenues therefrom pledged for the payment of the bonds.'' (Italics supplied.)

This Act was, in the case of *Jacobs* v. *Sharp*, 211 Ark. 865, 202 S. W. 2d 964, construed by us and upheld as against the contention that same was void because it pur-

ported to authorize a violation of Amendment No. 20 to the Constitution of Arkansas. But it was carefully pointed out in our opinion in that case, which involved a proposal to issue bonds for the building of certain dormitories by the University of Arkansas, that the bonds to be issued were to be "payable from and secured *solely* by a specific pledge of the revenues to be derived from rentals of the rooms in said dormitories . . . " (Italics supplied.)

Appellees argue that the situation here presented is controlled by our decision in the case of *City of Harrison* v. *Braswell*, 209 Ark. 1094, 194 S. W. 2d 12, 165 A. L. R. 845. In that case we had to construe the provisions of Act No. 131 of the General Assembly of Arkansas of 1933, as amended by Act No. 178 of the General Assembly of 1943, and the provisions of Act No. 132 of the General Assembly of 1933. Said Act No. 131 authorized cities and towns to construct waterworks systems and to finance the cost thereof by issuing bonds secured by pledge of revenues therefrom; and said Act No. 132 authorized like proceedings in the construction of municipal sewer systems. By Act 178 of 1943 cities were authorized to use surplus arising from revenues from a waterworks system for other municipal purposes.

We held in the Harrison case, *supra*, that the City Council might use the surplus arising from the operation of one of these plants to discharge the bonds issued to defray cost of construction of the other. The interlocking nature of a city's sewer and water plants, stressed by Justice McHANEY in our opinion in the Harrison case, the vast difference in the power of a city in dealing with its fiscal affairs and the power of a Board of Trustees in handling such affairs of an educational institution, and the express legislative authority for the city to use surplus arising from operation of a waterworks system for other municipal purposes—all these sharply and clearly differentiate the situation in the Harrison case and the one in the case at bar. We conclude that the doctrine of the Harrison case should be extended no further than to a decision of the exact question there decided—certainly not to a case such as we are here considering.

322

In the Act involved in the instant case there is no authorization whatever for the Board of Trustees to use surplus funds arising from one "self-liquidating project" to pay interest and principal of bonds issued to construct another such project. On the contrary, there is an implied, if not a direct, prohibition in the Act against a contract to pledge other funds than those arising from the project itself. In empowering the Board of Trustees to secure the bonds to be issued, the Act invoked by appellees (§ 1 of Act 62 of 1947) provides: "In evidence of any such loan of funds the Board of Trustees is authorized and empowered to issue its negotiable interest bearing notes or bonds with a specific pledge, for the payment of the principal and interest thereof, *only of the gross tolls, fees, rents, and other charges, or any part thereof, to be derived as income from the project* . . . " (Italics supplied.) The Legislature thus restricted the security which the Board of Trustees might give for payment of the bonds to revenues from the project which the bonds were issued to finance. Since the Legislature saw fit to impose this limitation and used in said Act no language that could be construed as giving any authority for the making by the Board of the agreement to use, in liquidating the proposed bonds, surplus funds arising from another and different project, we conclude that the Board had no power to make the contract challenged in this suit.

No question was raised by the complaint or in the briefs in this case as to whether the proposal to divert to the discharge of the bonds for the second project part of the revenues of the first project, presumably already pledged to secure bonds issued to defray construction costs of the earlier project, might in an unlawful manner impair the rights of the holders of the first bond issue; and the views we have expressed above render consideration of this question unnecessary.

It follows that the decree of the lower court must be reversed and the cause remanded with directions to the lower court to overrule the demurrer to the complaint and for further proceedings not inconsistent with this opinion.