ARKANSAS *v.* TEXAS ET AL.

No. ——, Original.   Argued October 21, 1953.—Decided
November 16, 1953.

*Thomas J. Gentry,* Attorney General of Arkansas, and *E. J. Ball,* Special Assistant to the Attorney General, argued the cause for complainant.   With them on the brief was *Kay Matthews,* Assistant to the Attorney General.

*William H. Holloway* and *Marietta McGregor Creel,* Assistant Attorneys General of Texas, argued the cause for defendants.   With them on the brief was *John Ben Shepperd,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a motion by Arkansas to file a complaint against Texas and invoke our original jurisdiction granted by Art. III, § 2, of the Constitution.

The complaint alleges that the University of Arkansas, acting through its Board of Trustees, and the William Buchanan Foundation, a corporation organized under the laws of Texas, entered into a contract whereby the Foundation agreed to contribute a sum of $500,000 to the construction of a one-hundred-bed pediatric floor in a new hospital in the Arkansas State Medical Center. The allegations are that, though the University of Arkansas and the Foundation are ready, willing, and able to perform, the State of Texas, acting through her Attorney General, has filed suit in the Texas courts to enjoin the Foundation from performing the contract on the ground that under Texas law the trust funds of the Foundation must be expended for the benefit of Texas residents. The complaint further alleges that the University of Arkansas is an official instrumentality of Arkansas, that in reliance on the agreement with the Foundation it let contracts for the construction of the hospital, proceeded with construction to the sixth floor, and is without funds to proceed further unless Texas is enjoined from interference with the contract.

We issued a rule to show cause why leave to file the complaint should not be granted, 345 U. S. 954. Texas has made return to the rule and the case has been argued.

Texas first argues that the William Buchanan Foundation is an indispensable party to the suit. We do not agree. The theory of the complaint is that Texas is interfering without legal justification with Arkansas' contract with a third person. At least since *Lumley* v. *Gye,* 2 El. & Bl. 216, 118 Eng. Rep. 749 (Q. B. 1853), a cause of action based on that tortious conduct has been recognized. See *Angle* v. *Chicago, St. P., M. & O. R. Co.,* 151 U. S. 1, 13–15; *Bitterman* v. *Louisville & N. R. Co.,* 207 U. S. 205,

222–223. However appropriate it might be to join the Foundation as a defendant in the case (see *Texas* v. *Florida,* 306 U. S. 398, 405), the controversy is between Arkansas and Texas—the issue being whether Texas is interfering unlawfully with Arkansas' contract.

The contention that the controversy is between two States is challenged on the ground that the injured party is the University of Arkansas, which does not stand in the shoes of the State. Arkansas must, of course, represent an interest of her own and not merely that of her citizens or corporations. *Oklahoma* v. *Cook,* 304 U. S. 387. But as we read Arkansas law the University of Arkansas is an official state instrumentality; and we conclude that for purposes of our original jurisdiction any injury under the contract to the University is an injury to Arkansas.

The University, which was created by the Arkansas legislature,[1] is governed by a Board of Trustees appointed by the Governor with consent of the Senate.[2] The Board, to be sure, is "a body politic and corporate"[3] with power to issue bonds which do not pledge the credit of the State.[4] But the Board must report all of its expenditures to the legislature,[5] and the State owns all the property used by the University.[6] The Board of Trustees is denominated "a public agency" of the State,[7] the University is referred to as "an instrument of the state in the performance of a governmental work,"[8] and a suit against the University is a suit against the State.[9]

---

[1] See Ark. Acts 1871, No. 44; Ark. Stat., 1947, § 80–2801, Compiler's Notes.

[2] Ark. Stat., 1947, § 80–2802.

[3] Ark. Stat., 1947, § 80–2804.

[4] *Jacobs* v. *Sharp,* 211 Ark. 865, 202 S. W. 2d 964.

[5] Ark. Stat., 1947, § 80–2817.

[6] *Id.,* §§ 80–2849 ff.; 80–2905; 80–3311.

[7] *Jacobs* v. *Sharp,* 211 Ark., at 866, 202 S. W. 2d 964.

[8] *Vincenheller* v. *Reagan,* 69 Ark. 460, 474, 64 S. W. 278, 284. And see *Gipson* v. *Ingram,* 215 Ark. 812, 223 S. W. 2d 595.

[9] See *Allen Engineering Co.* v. *Kays,* 106 Ark. 174, 152 S. W. 992.

In determining whether the interest being litigated is an appropriate one for the exercise of our original jurisdiction, we of course look behind and beyond the legal form in which the claim of the State is pressed. We determine whether in substance the claim is that of the State, whether the State is indeed the real party in interest. *Oklahoma* v. *Cook, supra,* pp. 392–396. Arkansas is in our view the real party in interest. The University of Arkansas is her agency in the educational field—a branch or department of the State.

The central question which the case tenders is whether the William Buchanan Foundation has authority to spend its funds for furtherance of this Arkansas project. That is necessarily a question of Texas law, for the Foundation gets its existence and its powers from Texas. Texas courts speak with authority on those issues. Were we to undertake to resolve the questions, we might find ourselves in conflict with the courts that have the final say. Moreover litigation is now pending in the Texas courts which will authoritatively determine what the Texas law is. We therefore follow the course we have taken in analogous situations (cf. *Thompson* v. *Magnolia Co.,* 309 U. S. 478, 483; *Herb* v. *Pitcairn,* 324 U. S. 117) and continue the present motion until the litigation in the Texas courts has been concluded. If that litigation resolves the whole controversy, leaving no federal questions, there will be no occasion for us to proceed further.

*It is so ordered.*

MR. JUSTICE JACKSON, whom MR. JUSTICE FRANKFURTER, MR. JUSTICE CLARK and MR. JUSTICE MINTON join, dissenting.

We would deny this motion outright, because we think no case is presented appropriate for original action here.

In 1923, William Buchanan, a citizen and resident of Texas, executed within that State a conveyance of personal property to trustees. They, in Texas, duly ac-

cepted the trust. The trust instrument recited the purpose to create and endow an incorporated charitable enterprise known as "The William Buchanan Foundation" in the City of Texarkana, Texas. Such a corporation was created by the State of Texas for the particular purpose of carrying out the provisions of the trust deed made by Buchanan.

It is needless to recite these purposes beyond saying that they are broadly stated, and some clauses leave the broadest discretion to the Foundation. Another clause contemplates that the trust "shall be administered in Bowie County, Texas, but for the benefit not only of the citizens or residents of said county, but also for the benefit of the citizens or residents of adjoining counties, as well as for the benefit of such other persons as in the judgment of the Trustees should receive the benefits of the activities or institutions established hereunder." That this instrument is open in good faith to different interpretations seems apparent.

The trustees have made an agreement to expend a large sum for a charity hospital at the University of Arkansas, a state institution. The validity of that contract is questioned in the courts of Texas by the Attorney General thereof, whose duties include some supervision of the administration of charitable trusts.

If under these circumstances the courts of Texas cannot finally decide the validity and interpretation of its own charter and trust instrument and its corporation's power to contract, then there is little left of the original conception of state power. This Court seems to agree that some vestige, at least, of such power remains.

If a controversy between two states concerns the construction of a compact, *Dyer* v. *Sims,* 341 U. S. 22, or presents "a question of 'federal common law' upon which neither the statutes nor the decisions of either State can be conclusive," *Hinderlider* v. *La Plata Co.,* 304 U. S. 92,

110, this Court must, of course, determine their rights *inter sese.*

Local questions may be intertwined with these ultimate federal rights, and if there are sufficient grounds for delaying final action we may wait in order to "have the advantage of the views of the state court." See *Kentucky* v. *Indiana,* 281 U. S. 163, 177.

But where, as here, we are concerned with a question of Texas law in which the courts of that State necessarily "have the final say" the only basis for our holding the suit is to ride herd on the Texas court, on the assumption that it may deny Arkansas some federal right. We ought not to entertain such a possibility in the administration of justice of one state against a sister state. Of course Arkansas will get justice in Texas, just as Texas would get justice in Arkansas.

If Texas courts decide that the contract is valid, Arkansas has no grievance. If Texas decides the other way, what more does this Court plan to do? What is the meaning of holding this case on the docket? We think the Texas courts should be left to decide their state law questions without the threat implicit in keeping this case alive. Exertion of a state's power to determine whether a contract of its corporation is *ultra vires* cannot be made a tortious interference with the rights of any party to the contract. Since we think the contention is frivolous, we would deny the motion and have done with the business.