Marie–Therese Halim
ASSAAD–FALTAS,
Plaintiff,

v.

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES; Aubrey Hough, Jr.; A.A. Pappas; and M. Melinda Sanders, Defendants.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS; Aubrey J. Hough, Jr., M.D., Chairman of the Department of Pathology, UAMS; M. Melinda Sanders, M.D., Chairman of the Residency Training Committee, Department of Pathology, UAMS; and Alexandros A. Pappas, M.D., Director of Clinical Laboratories UAMS, Counter–Claimants,

v.

Marie–Therese Halim ASSAAD–FALTAS, Counter–Defendant.

Marie–Therese H.
ASSAAD–FALTAS, Plaintiff,

v.

Alexandros A. PAPPAS, M. Melinda Sanders, Robin Jones, Anna Francine Tryka, Houn Yee Houn, Marianna Pardue, Elizabeth Cockerill, Linda Flores, Jane Lewis, Eric Reimund, Sid Eudy, Saad Paul Shaheen and Robert Griffin, Defendants.

Nos. LR–C–87–365, LR–C–87–439.

United States District Court,
E.D. Arkansas, W.D.

March 1, 1989.

Marie–Therese Halim Assaad Faltas, Durham, N.C., pro se.

Ginger P. Crisp, Associate Gen. Counsel, Fayetteville, Ark., and Fred· H. Harrison, Gen. Counsel, Little Rock, Ark., for defendants.

## ORDER

ROY, District Judge.

The two consolidated cases before the Court have had a rather torturous history. The Eighth Circuit Court of Appeals has succinctly set out the history in *Faltas v. University of Arkansas for Medical Sciences,* No. 87–1951 (8th Cir. Dec. 27, 1988) (not designated for publication).

These appeals arise of out consolidated actions brought by Assaad against UAMS and members of the UAMS pathology department. Assaad is a Copt Eygptian national. She was appointed to a residency at UAMS for the period beginning July 1, 1986 and ending June 30, 1987. Assaad began her residency in a chemistry rotation, during which she was rated as having performed acceptably well. Her next rotation was in clinical pathology, where it appears that Assaad first began to have problems with the UAMS staff. The record indicates that Assaad was defensive and argumentative when offered constructive criticism by attending physicians.

The Residency Training Committee (Committee) became concerned with Assaad's performance and recommended that she work more closely with a senior resident while on call in the clinical pathology rotation. This recommendation was refused by Assaad, and she was assigned to an autopsy rotation. In December 1986, the Committee decided not to renew Assaad's appointment for 1987–1988.

During Assaad's autopsy rotation, numerous problems arose. On February 23, 1987, the Committee placed Assaad on probation for the following reasons: (1) her failure to complete fourteen overdue autopsies; (2) her failure to perform an autopsy as requested by Dr. Aubrey Hough, professor and chairman of the pathology department, and Dr. Robin Jones, director of the autopsy service; (3) her removal of disposable scrub suits and gloves from the VA Hospital without authorization; and (4) her unavailability to perform an autopsy on February 21 and 22, 1987. Assaad was removed from the

autopsy rotation and from all on-call duties and given until March 17, 1987, to complete the overdue autopsies. On March 18, 1987, Assaad was terminated, apparently because of her failure to complete the outstanding autopsies (the letter of termination has since been expunged from Assaad's file).

Assaad appealed her termination to the UAMS Appeals Committee. After three days of hearings, the Appeals Committee negotiated a settlement containing the following conditions: (1) Hough would expunge his letter of termination of March 18, 1987; (2) Assaad would withdraw her appeals action; (3) Assaad would be allowed to complete the outstanding autopsies at the VA; (4) Assaad would receive a certificate for nine months of residency training; and (5) Assaad would resign as of April 30, 1987.

On June 1, 1987, Assaad brought an action for injunctive relief and damages pursuant to 42 U.S.C. §§ 1981 and 1983 against appellee UAMS, Hough and Drs. M. Melinda Sanders and Alexandros Pappas, staff pathologists and members of the Committee. Assaad alleges that she was terminated as a resident without cause and on the basis of race. It was also alleged that appellees violated the settlement agreement. Assaad then filed a motion for a temporary restraining order and preliminary injunction seeking to return to UAMS to complete her residency.

After a hearing, the district court denied Assaad's motion, concluding that under the factors set out in *Dataphase*, Assaad failed to satisfy her burden. Assaad appeals the denial of this motion in Appeal No. 87–1951.

On July 1, 1987, Assaad filed a second action alleging negligent training, negligence and assault, and libel and slander, naming as defendants many of the witnesses who had testified at the earlier hearing. Assaad applied for a preliminary injunction, this time to place her UAMS residency file under seal of the court, ordering appellees to refrain from quoting documents in the file, and ordering appellees to warrant that their employees, agents and servants would refrain from any publications not specifically authorized by Assaad.

The case was assigned to the same judge who was presiding over the previous case. The court set a hearing on Assaad's second application for a preliminary injunction, consolidated the two actions, and authorized the parties and the court to consider relevant evidence from the prior hearing. Two days before this hearing, Assaad sought to have forty-seven subpoenas served upon physicians and staff at UAMS and the VA Hospital. The court limited each side to six witnesses. On November 3, 1987 the district court denied the application for a preliminary injunction using the *Dataphase* test. Assaad appeals this denial in appeal No. 87–2678.

Assaad's third appeal is from the denial of two motions made after the hearing on her second application for a preliminary injunction. One of Assaad's subpoenas duces tecum was issued to obtain the tape recordings of the UAMS Appeals Committee hearings. These tapes were entered into evidence without having been played. After the hearing, the tapes were given to appellees' counsel to be copied for Assaad. Soon thereafter, it was discovered that only one session had been recorded and that the tapes from two other days of hearings were blank. Assaad moved for sanctions against appellees for refusing to provide her with these tapes, and for a hearing to reconstruct the contents of the tapes. Appellees responded by submitting affidavits of the custodian of the tapes and of all committee members who were present at the hearing regarding the circumstances surrounding the copying of the tapes at the appeal hearing and for Assaad after the second hearing.

Also, on January 14, 1988, Assaad filed a motion to recuse the district court judge because the judge had served on an advisory committee to UAMS between 1953 and 1955. Both the motion for sanctions and motion to recuse were denied by the district court in separate

orders on March 7, 1988. Assaad appeals these orders in appeal No. 88-1590. *Id.* slip op. at 3-6.

There are motions to dismiss and for summary judgment pending before the court. In light of the affirmance by the Eighth Circuit of this Court's denial of plaintiff's motions for a preliminary injunction, motion for sanctions and motion for recusal, the Court will now proceed with the motions to dismiss and for summary judgment.

■ Plaintiff has named "the University of Arkansas for Medical Sciences" (UAMS) as a defendant in Case No. LR-C-87-365. UAMS is the name of a campus which is a part of the University of Arkansas, an institution of higher education established under Arkansas law. (Ark.Code Ann. §§ 6-64-401 *et seq.*). UAMS is not a separate institution or a corporate body which has the capacity to sue or be sued. Therefore, all allegations directed at UAMS are dismissed for failure to state a claim upon which relief can be granted.

■ The next issue raised by defendants is that the Board of Trustees of the University of Arkansas is immune from suit under the Eleventh Amendment. As stated by the defendants, the Eighth Circuit considered the question of whether the University of Arkansas Board of Trustees was entitled to Eleventh Amendment immunity in *Greenwood v. Ross,* 778 F.2d 448 (8th Cir.1985). In that case, appellees, the Chancellor and Athletic Director of the University of Arkansas at Pine Bluff, and the Board of Trustees of the University of Arkansas, argued that the United States Supreme Court holding in *Arkansas v. Texas,* 346 U.S. 368, 74 S.Ct. 109, 98 L.Ed. 80 (1953), entitled the University to Eleventh Amendment immunity.

The Eighth Circuit acknowledged that *Arkansas v. Texas* "considered the relationship between the State of Arkansas and the University of Arkansas and held that 'the University of Arkansas is an official state instrumentality ... and a suit against the University is a suit against the State.' 346 U.S. at 370 [74 S.Ct. at 111]." However, the Eighth Circuit concluded that the

Supreme Court's holding did not decide the issue of Eleventh Amendment immunity because it "was considering whether a suit by the University of Arkansas against the State of Texas was a suit between two states so as to come within the original jurisdiction of the Court," and was not deciding the University's status in the Eleventh Amendment context. *Greenwood v. Ross, supra* at 454.

Without reaching a decision, the Eighth Circuit remanded *Greenwood* to the District Court for the Eastern District of Arkansas with directions "to make findings concerning whether the University of Arkansas is for Eleventh Amendment purposes a separate entity from the State of Arkansas."

Although a decision by the District Court had not been rendered at the time the motion for summary judgment was filed, on January 29, 1988, United States District Judge George Howard entered a Memorandum Opinion and Order, making the following findings on the issue of Eleventh Amendment immunity.

Following the directions of the Eighth Circuit, the court now addresses whether the suit for damages against the University is barred by the Eleventh Amendment. On December 9, 1986, in the case of *Lorman Drilling Contractors, Inc. v. U.S. Fidelity & Guaranty Co.,* 85-5191, out of the Western District of Arkansas, Judge Waters found that the University of Arkansas Board of Trustees is the state for purposes of the Eleventh Amendment and so is immune from suit. In *Willis v. Laser,* LR-C-86-311 (E.D. Ark. April 27, 1987), Judge Eisele also held that the University is immune from suit under the Eleventh Amendment. While plaintiff argues that the state has explicitly waived its immunity, the Court cannot find an express waiver of immunity in Ark.Stat.Ann. § 13-349(M) (Repl. 1979) which merely provides the mechanism for payment of judicial awards through the payrolls. The Arkansas Supreme Court in *Beaulieu v. Gray* recently reaffirmed that Article V, § 20 of the Arkansas Constitution provides for sov-

ereign immunity. See also, Pagan, *Eleventh Amendment Analysis*, 39 Ark.L. Rev. 447. Thus, while monetary damages against the University are barred by the Eleventh Amendment, prospective, equitable relief either by injunction or declaratory judgment is not barred. *Slaughter v. Levine*, 801 F.2d 288 (8th Cir.1986). Furthermore, the Eleventh Amendment does not bar the Title VII claim against the University. *Fitzpatrick v. Bitzer*, 427 U.S. 445 [96 S.Ct. 2666, 49 L.Ed.2d 614] (1976)

*Greenwood v. Ross*, LR–C–79–406, pg. 4–5 (Jan. 29, 1988).

The Court agrees with Judge Howard and will not address all of defendants' arguments on this issue. As an instrumentality of the State of Arkansas, the University of Arkansas and its officials are entitled to Eleventh Amendment immunity from damage claims brought under 42 U.S. C. § 1983. Summary judgment is therefore granted as to plaintiff's damage claims.

■ Summary judgment is also appropriate as to plaintiff's pendent state law claim for breach of contract, alleged in LR–C–87–365. The Eleventh Amendment prohibits a federal court from entertaining pendent claims alleging state officials violated state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ Defendants next contend that the officers and employees of the University of Arkansas are immune from suit in state courts. This is relevant as to the plaintiff's tort claims in Case No. LR–C–87–439. The defendants set out the applicable law and the court reiterates it as follows:

In *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880, 881 (1986), the Arkansas Supreme Court discussed the application of the doctrine of sovereign immunity of the State to state employees:

[I]n 1981, the General Assembly enacted Ark.Stat.Ann. Section 13–1420 (Supp. 1985), which provides:

Officers and employees of the State of Arkansas are immune from civil liability for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

\* \* \* \* \* \*

Summarizing this brief overview of the immunity doctrines, the Arkansas Constitution provides for sovereign immunity and Ark.Stat.Ann. Section 13–1420 provides for immunity of officers and employees of the state.

The suit at bar is filed against employees of the state, and under the quoted statute those employees are immune from civil liability for non-malicious acts occurring within the course of their employment.

While this action is nominally filed against state employees, it is in reality an action against the State of Arkansas in violation of the sovereign immunity clause. The standard for determining whether the State is the real party in interest is set out in *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938):

Accordingly, it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent.

In this case the real party against whom relief is sought is the State since, under the provisions of Ark.Stat.Ann. Section 12–3401 (Repl.1979), a 1979 statute, the State would be required to pay any judgment obtained against appellees. The statute provides:

The State of Arkansas shall pay actual, but not punitive, damages adjudged by a state or federal court, or entered by such a court as a result of a

compromise settlement approved and recommended by the Attorney General, against officers or employees of the State of Arkansas, or against the estate of such an officer or employee, based on an act or omission by the officer or employee while acting without malice and in good faith within the course and scope of his employment and in the performance of his official duties.

Defendants' brief, pages 22–23.

The Court finds that it is clear from the testimony at both hearings that defendants Hough, Pappas, Sanders, Tryka and Jones are members of the faculty at UAMS, and that all actions taken by them related to plaintiff were in that capacity. Testimony further established that defendants Houn, Pardue, Cockerill, Flores, Lewis, Reimund, Eudy and Shaheen were residents in pathology at UAMS during all times relevant to the allegations against them. The Court finds that these defendants are squarely within the protection of Ark.Stat.Ann. §§ 13–1420 (now Ark.Code Ann. § 19–10–305) and 12–3401 (now Ark.Code Ann. § 21–9–203). No evidence indicates that any defendants acted with malice, so as to form a basis for the award of punitive damages. Thus, the State of Arkansas is the real party in interest in this action, and a judgment for plaintiff would subject the State to liability. Plaintiff's complaint in Case No. LR–C–87–439 is dismissed for lack of subject matter jurisdiction under the doctrine of sovereign immunity.

■ In action No. 87–365, plaintiff names Aubrey Hough, Jr., A.A. Pappas, and M. Melinda Sanders, and alleges that she was terminated from her residency without cause, "due in part because of her race and national origin for wanting to take adequate precautions in performing an autopsy."

After the June 23 and 24 hearing, this Court found "insufficient evidence was presented to show race or national origin played any role in this case. Even plaintiff's own testimony failed to show such discrimination."

At the hearing, the Court allowed a substantial amount of testimony from both parties. The Court found that the parties entered into an agreement, the terms of which were:

(1) Dr. Hough will expunge his letter of termination of March 18, 1987.

(2) Dr. Assaad will withdraw her appeals action.

(3) Dr. Assaad will be allowed to complete the outstanding autopsies at the VA.

(4) Dr. Assaad will receive a certificate for 9 months of residency training.

(5) Dr. Assaad will resign as of April 30, 1987.

The testimony at the hearing was also undisputed that defendants fully performed their agreement. Plaintiff was allowed to perform the outstanding autopsies at the Veteran's Administration Hospital and has been paid for them. Dr. Hough testified that he had destroyed the copy of the letter terminating her. A certificate that she satisfactorily completed postdoctoral training as a resident in pathology from July 1, 1986 to April 30, 1987, has been prepared. In addition, plaintiff was allowed to complete training at Arkansas Children's Hospital from April 16 to April 30. She received the stipend under her Residency Agreement from March 18 through April 30.

There are no material facts in dispute as to the decision to terminate plaintiff from her residency in pathology, or the decision to withdraw the termination and allow her to resign. Plaintiff's national origin or race played no part in either decision. Summary judgment is granted as to the allegations of discrimination, particularly against separate defendants Hough, Sanders and Pappas.

[6] Further support for the motion is found in defendants' argument that the settlement agreement entered into on April 15, 1987 constitutes an accord and satisfaction of all claims of plaintiff.

Plaintiff is asking now to "have her cake and eat it, too." She has accepted the benefits of the "arbitration" agreement.

She now seeks to also enforce whatever claims she might have had resulting from her termination, which has been withdrawn. The public policy in favor of voluntary settlements would be thwarted if she were permitted to maintain this action. "No employer would agree to conciliation in such a 'no win' situation, and the policy of the law seeking cooperation and negotiated settlements would fail." *Trujillo v. State of Colorado,* 649 F.2d 823, 826 (10th Cir.1981).

An employee may waive a cause of action as part of a voluntary settlement agreement. In determining the effectiveness of such a waiver, the Court must determine that the employee's consent to the settlement was voluntary and knowing. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).; *Worthy v. McKesson Corp.,* 756 F.2d 1370 (8th Cir.1985).

In this instance, plaintiff agreed to accept the proposed agreement of the grievance hearing committee that she resign, in return for which her termination was withdrawn. The effect of withdrawal of the termination is to remove it as a fact. It would be anomalous for plaintiff to have resigned and at the same time have been terminated. She was given the choice of continuing her appeal or accepting the settlement agreement. Having voluntarily chosen to do so, she should not be permitted to now allege the withdrawn termination was discriminatory.

■ With respect to the plaintiff's defamation claim, the defendant's brief contains an accurate reflection of the facts and circumstances surrounding the claim. They are stated as follows:

In Count IV, paragraph 1 of her complaint in Case No. LR–C–87–439, plaintiff states that defendants Pappas, Sanders, Jones and Tryka had "limited" supervisory duties over her, and that defendant Houn owed plaintiff certain representative duties. In Paragraph 1 of her Application for a Preliminary Injunction in Case No. LR–C–87–439, plaintiff states that "most of the defamatory statements alleged in the complaint have been placed by defendants in the file maintained on plaintiff by the Department of Pathology in the University of Arkansas for the Medical Sciences in the control of defendant Sanders and her agents." Plaintiff alleges that publication of the allegedly defamatory statements has occurred through placement of the documents containing the statements in the described file, submission to a six-member panel convened by the Dean of the University of Arkansas College of Medicine in April 1987, and proffered to this court in June 1987. See Paragraph 2 of plaintiff's Specific Information Provided in Compliance with a Court Order and in Support of Plaintiff's Motion for a Preliminary Injunction.

On June 23 and 24, 1987, in Case No. LR–C–87–365, this Court heard testimony from plaintiff and defendants Pappas, Sanders, Jones, Tryka and Houn, and received documentary evidence which included most of the documents which plaintiff alleges contain defamatory statements. The evidence and statements were offered in response to the allegations in plaintiff's complaint and her testimony. The Court found the testimony of the witnesses for the defendants in the hearing to be credible. To the extent that the testimony in that hearing forms the basis for plaintiff's allegations of publication of defamatory statements, the testimony and evidence are absolutely privileged. *Westridge v. Wright,* 466 F.Supp. 234 (D.C.Ark.1979).

At the two hearings, defendants Pappas, Sanders, Jones and Tryka were identified as faculty in the Department of Pathology at UAMS, who served as plaintiff's supervisors at various times during her residency, and members of the Pathology Residency Training Committee. Defendant Houn was identified as the former Chief Resident. Defendants Pardue, Cockerill, Flores, Lewis, Reimund, Eudy, and Shaheen were identified as residents at UAMS. Each of the defendants has a common interest in the training of residents at UAMS. Each faculty defendant had a duty to commu-

nicate knowledge about the performance of residents to other members of the Pathology Residency Training Committee and to retain copies of such evaluations in the departmental files of the various residents. The information contained in plaintiff's file was relevant to the deliberations of the Appeals Committee concerning plaintiff's appeal of her termination.

Defendants Pardue and Lewis testified at the August 5 and 6 hearing that the Memorandum of March 23, 1987, to Drs. Hough and Sanders from the resident defendants was written to support the decision to terminate plaintiff out of concern that the Appeals Committee might not have enough facts to sustain plaintiff's termination. It was their intention to supply additional information to the Appeals Committee for their consideration.

The testimony in both hearings substantiates that the alleged defamatory statements are true. The statements relate to plaintiff's performance as a resident in pathology, and were amply supported by testimony of various witnesses. In its Order denying plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction in the previous case, this Court quoted the testimony of defendant Dr. Houn Yee Houn, who was chief resident during the period in question, as follows: "Dr. Houn testified that plaintiff was disruptive, would never share the responsibilities with other residents, could not be located on many occasions, and went to sleep during orientation periods." Order dated the 26th day of June, 1987, Case No. LR–C–87–365, p. 5. This Court further cited the testimony of several witnesses for defendants that "plaintiff was also uncooperative, defensive and argumentative at work."

This Court found plaintiff's demeanor on the stand tended to confirm the testimony of defendant's witnesses that plaintiff had difficulty with colleagues. This testimony was further corroborated by the testimony of Dr. Rex Bell, a pathology resident who is not a defendant, and by Dr. Ernest Wilson of the V.A. Hospital, who is also not a defendant.

The Court also finds that the record of both hearings amply supports Dr. Robin Jones' statement that plaintiff had "germ phobia". Dr. John Peters, a psychiatrist, testified on August 5th that a phobia is a fear, and a fear of germs could be characterized by distancing oneself from the possibility of contact with germs, and by placing an article believed to be free of germs, such as a tissue, between oneself and an object to be touched. Plaintiff testified that only disposable gowns were sufficiently germ-free for her to wear during autopsies. This statement was made to justify plaintiff's taking of disposable gowns without permission from the VA Hospital. Other residents and physicians testified that they wore the washable gowns provided by UAMS and Arkansas Children's Hospital in performing autopsies, and that they were sterile.

Plaintiff refused to perform an autopsy on a body which she suspected of being contaminated with hepatitis using normal precautionary procedures, and insisted on using procedures which her supervising physicians asserted had no validity. One of plaintiff's supervisors performed the autopsy. The Court recognizes the importance of sanitation and the importance of maintaining a sanitary, sterile environment in a medical institution. This is certainly important not only to the medical care providers but also to the public in general. However, it is clear that plaintiff had an excessive concern and fear about germs which caused plaintiff's superiors concern. There was ample testimony from both hearings to support the statement that plaintiff is abnormally afraid of coming into contact with "germs" and thus has "germ phobia," in the lay sense of the term.

During her testimony on June 24, defendant Tryka recounted an episode in which she witnessed a near collision between plaintiff and defendant Reimund. Dr. Tryka testified that she asked plaintiff why she was "being so rude in a perfectly accidental situation." When plaintiff explained

that Dr. Reimund should have deferred to her because she was a woman, Dr. Tryka replied that "in the United States, men and women are equal, and this is really no longer an applicable standard." Dr. Tryka admitted that the discussion escalated, and that she used profanity. Nothing that was said or alleged by plaintiff to have been said by Dr. Tryka constitutes defamation. The alleged publication was directly to plaintiff, and said in the course of Dr. Tryka attempting to maintain order in her own office. In any event, such statements are privileged.

Summary judgment is granted as to all of the allegations in Count IV of plaintiff's complaint in Case No. LR–C–87–439.

The plaintiff alleges numerous causes of action of defamation against the individual defendants who are members of the faculty at UAMS or resident physicians there. In addition to other privileges set forth herein, it has been held that statements of opinion are protected by the common law "fair comment" privilege as well as by the First Amendment to the United States Constitution. Since the holding of the United States Supreme Court in *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974) the Court made clear that as a matter of constitutional law there can be no such thing as a false idea or opinion. The factors which go into determining whether statements are opinion were set forth by the Eighth Circuit in *Janklow v. Newsweek Inc.*, 788 F.2d 1300 (8th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

It is not necessary to analyze each and every statement which plaintiff may be asserting is defamatory. Suffice it to say that her contentions on this issue have no merit. A substantial number of statements of which plaintiff apparently complains are clearly statements of opinion by faculty members or residents as to the plaintiff's professional competence or personal characteristics related to her job performance. For example, the memorandum from Dr. Robin Jones regarding "germ phobia" and the memorandum signed by most of the residents in substance constitutes state-

ments of opinion protected by the First Amendment.

■ Plaintiff alleges in Count I of her complaint in Case No. LR–C–87–437 that defendants Sanders, Pappas, Jones and Tryka breached their duty of providing plaintiff with adequate training. The consistent testimony of the defendants and other witnesses at both hearings indicated that plaintiff failed to attend various conferences and sessions scheduled for residents, which were designed to provide training. As stated earlier, plaintiff frequently fell asleep at the conferences she attended. She was disruptive and argumentative with faculty and residents who tried to teach her. She refused to take call under the supervision of more experienced residents who were more knowledgeable.

In spite of her graduate education, she was considered by residents and faculty alike as having deficiencies in her fund of knowledge. Yet she stated in her testimony on August 6 that she believed she knew more about some areas of pathology than defendants Hough, who is Professor and Chairman of Pathology, Pathologist and Chief of the University Hospital, Chief of Staff at the University Hospital, President of the Council of Departmental Chairmen of the College of Medicine of the University of Arkansas for Medical Sciences; Dr. Sanders, Chairman of the Residency Training Committee in pathology; Dr. Pappas, Associate Professor of Pathology and Allied Health Sciences and Director of the Clinical Laboratory; and Dr. Jones, Director of the Autopsy Service at the University of Arkansas Medical Center. There is no genuine issue as to any material fact concerning attempts by defendants Sanders, Tryka, Pappas and Jones to teach plaintiff. She refused to receive their instructions. Summary Judgment is granted as to plaintiff's allegations contained in Count I of the complaint.

With respect to plaintiff's claims of plagiarism and conversion against defendant Tryka, and assault, negligence and invasion of privacy against Robin Jones, the Court finds that the facts alleged do not rise to the level of proof necessary to support

claims of assault, negligence, invasion of privacy, plagiarism and conversion. Thus, these claims should be dismissed for failure to state facts upon which relief can be granted.

Mere words cannot amount to an assault, and there are no allegations of threatened or offered violence. Use of the term "germphobia" did not breach any duty owed by Dr. Jones to plaintiff as her physician, and thus does not constitute negligence. The same reasoning used in discussing the allegations of defamation also apply to the claim of invasion of privacy. No violation of the federal copyright act has been asserted, and no dominion or control over a chattel has been alleged to allow claims for plagiarism and conversion.

The Court is further persuaded by defendants' arguments that defendants Hough, Pappas, Sanders, Tryka and Jones are entitled to the defense of qualified immunity. Dr. Hough is chairman of the Pathology Department at UAMS; Dr. Sanders is chairman of the Pathology Residency Training Committee. Dr. Pappas is Director of the Clinical Laboratories at UAMS. All three were also faculty members and are required to exercise their discretion in making judgments concerning the pathology residents, and thus are administrative officials who must exercise discretionary judgment.

Plaintiff was terminated in February, 1987. The United States Supreme Court did not rule that the prohibition against racial discrimination in 42 U.S.C. Section 1981 was broad enough to include persons of the semitic race until May 18, 1987. *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Thus, even if the allegations of the complaint are taken as true, defendants are entitled to the defense of qualified immunity from damages.

In plaintiff's pleadings, innumerable allegations were made, not all of which have been specifically addressed herein. However, the Court has addressed all plaintiff's substantial contentions, and has also carefully considered all allegations made by plaintiff. The Court finds those not discussed also to be without merit.

It is the opinion of this Court that, initially, all claims were in good faith settled. This constitutes accord and satisfaction of all claims, and defendants have not violated the terms of this settlement agreement.

However, in the event the 8th Circuit Court of Appeals finds this settlement did not preclude some of the claims heretofore set out, this Court finds as follows:

(1) The claims against the University of Arkansas for Medical Sciences are dismissed because UAMS does not have the capacity to sue or be sued.

(2) The damage claims against officials and employees of the University of Arkansas are dismissed under the doctrines of Eleventh Amendment sovereign immunity, sovereign immunity under the Arkansas Constitution and law, and qualified "good faith" immunity.

(3) All defamation claims and breach of privacy claims are dismissed as true statements or privileged comments.

(4) Claims for plagiarism, conversion, assault and negligent diagnosis are dismissed for failure to state facts upon which relief can be granted.

(5) Summary judgment is granted as to all claims of failure to provide adequate training.

ORDERED.