MOORE, Circuit Judge,
dissenting.
The majority erroneously holds that a patent-ownership dispute between two state universities is not a “controversy between two or more States.” It then compounds this error and holds that a patent owner is not an indispensable party to an action that seeks to reassign title to the patents-in-suit. I respectfully dissent.
I. Subject Matter Jurisdiction
The district court lacks jurisdiction over UUtah’s claims against the UMass Officials because those claims raise a dispute between two States, Utah and Massachusetts. Article III of the U.S. Constitution vests the Supreme Court with original jurisdiction over cases in which a State is a party. As § 1251(a) expressly states: *1329 “The Supreme. Court shall have original and exclusive jurisdiction of all controversies between two or more States.” There is no dispute that UUtah and UMass are instruments of Utah and Massachusetts, respectively, and that a suit between those institutions could only, be brought in the Supreme Court. See Maj. Op. at 1321; Arkansas v. Texas, 346 U.S. 368, 370-71, 74 S.Ct. 109, 98 L.Ed. 80 (1953). The majority, however, concludes that § 1251(a) does not apply here because UUtah elected to sue the UMass Officials rather than UMass. That conclusion is incorrect.
To determine if a suit implicates the Supreme Court’s exclusive original jurisdiction, we look “behind and beyond the legal form” of the claim and determine “whether the State is indeed the real party in interest.” Arkansas v. Texas, 346 U.S. at 371, 74 S.Ct. 109. The majority agrees with this general proposition but holds that the UMass Officials, not UMass, are the real parties in interest. I disagree.
This case involves a dispute between UMass and UUtah over who owns the rights to the Tuschl II patents. UMass is the assignee of the Tuschl II patents and UUt^ih “wants to own the patents.” Oral Arg.[1] at 43:45-43:54. UUtah is pursuing that interest through a correction of inven-torship claim under 35 U.S.C. § 256 and a corresponding request for an order that UUtah owns the patents. J.A. 134-36, 141-43. UUtah claims that one of its faculty members, Dr. Bass, invented the subject matter claimed in the Tuschl II patents. J.A. 118-34. It alleges that Dr. Bass’s resulting ownership interest flows to UUtah by “operation of law” via an assignment obligation. Id.; Oral Arg. 42:44-43:10.
UUtah also alleges in its complaint that it “should be the sole owner or an owner” of the Tuschl II patents. J.A. 134. It specifically requests that the court “order assignment of all right title and interest” in the patents to UUtah. J.A. 142. Indeed, the majority recognizes (1) that UU-tah specifically requested that the court assign it all rights to the Tuschl II patents and (2) that UUtah will obtain the rights to the patents if it prevails on its correction of inventorship claims. Maj. Op. at 1324 n. 3. This is a dispute about ownership, plain and simple.
UUtah cannot recast the nature of this dispute by suing the UMass Officials as stand-ins for UMass. Indeed, the majority never holds that the UMass Officials have any interest in this proceeding. Nowhere does the majority suggest that the UMass Officials are “parties concerned” that may be subject to a correction of inventorship action under § 256(b). See Chou v. Univ. of Chi., 254 F.3d 1347, 1359-60 (Fed.Cir.2001) (holding that parties with an “economic stake” in the patent are proper defendants in a § 256(b) action). The UMass Officials do not .have a real interest in this action.
Section 1251(a) contains “uncompromising language”: the Supreme Court has original and exclusive jurisdiction over “all controversies between two or' more States.” Mississippi v. Louisiana, 506 U.S. 73, 77, 113 S.Ct. 549, 121 L.Ed.2d 466 (1992). The majority errs when it concludes that § 1251(a) does not apply to this dispute because the “State has no core sovereign interest” in inventorship or patent ownership. Maj. Op. at 1323-25. The majority’s “core sovereign interests” test is at odds with the plain' language of the statute, which contemplates “all controversies” between states fall within 1251, not just those involving core sovereign interests. There is simply no basis to limit the statute in such a way.
Moreover, requiring a core sovereign interest to implicate the Supreme Court’s exclusive jurisdiction erodes the Court’s *1330 discretion to decide which controversies it will hear. The existence of the Supreme Court’s exclusive jurisdiction and its discretion to exercise that jurisdiction are separate concepts. The Court’s exclusive original jurisdiction extends to “all controversies between two or more States.” 28 U.S.C. § 1251(a). The Court, however, is not required to exercise its jurisdiction over every controversy. The Court tends to exercise its jurisdiction sparingly, depending upon the nature of the interest of the complaining State, the seriousness and dignity of the claim, and the availability of another original forum to resolve the dispute. Mississippi v. Louisiana, 506 U.S. at 76-77, 113 S.Ct. 549. The concept of a “core sovereign interest” has roots in opinions that address whether the Supreme Court will decide to exercise its jurisdiction over a dispute, not whether the Court’s exclusive original jurisdiction over the controversy exists. See id. at 77, 113 S.Ct. 549; Texas v. New Mexico, 462 U.S. 554, 570, 571 n. 18, 103 S.Ct. 2558, 77 L.Ed.2d 1 (1983); Connecticut ex rel. Blumenthal v. Cahill, 217 F.3d 93, 109 (2d Cir.2000) (collecting cases). The majority’s conflation of those two concepts strips the Supreme Court of its discretion to decide if a case is sufficiently serious to exercise jurisdiction over it. It reallocates that power to the lower courts — who will decide which subset of cases — those implicating core sovereign interest — will be presented to the Supreme Court.[1]
The majority finds support for its decision in the Second Circuit’s split decision in Cahill. With all due respect, even if we adopt the flawed logic of the majority in Cahill, this case would still fall within the Supreme Court’s exclusive jurisdiction in § 1251. The majority correctly recognizes that, generally, a State is the real party in interest if “the effect of the judgment would be to restrain the Government from acting, or compel it to act.” Maj. Op. at 1324 (quoting Cahill, 217 F.3d at 106). But the majority nevertheless concludes that UMass is not the real party in interest because a judgment to correct inven-torship “will not require or restrain UMass from acting.” Id. at 1324. This is not correct.
A judgment in UUtah’s favor will restrain UMass’s ability to act. If successful, UUtah will be declared sole owner of the Tuschl II patents and UMass will have no interest in them. UMass will not be able to license or assign the patents. And UUtah will be able to exclude UMass from practicing the inventions claimed in the patents. Patent rights are the quintessential right to restrain. The effect of this judgment will be to prevent UMass from exploiting the Tuschl II patents or the technologies they cover. This certainly “restraints] the Government from acting.”
UUtah alternatively requests that Dr. Bass be found to be a co-inventor. A finding that Dr. Bass is a co-inventor of the Tuschl II patents will result in UUtah co-owning those patents. The effect of the judgment would be that UUtah could practice or license the patents without UMass’s consent and without having to account to UMass. See 35 U.S.C. § 262. The judgment would thus restrain UMass from asserting its rights in the Tuschl II patents *1331 against UUtah or any of UUtah’s licensees. Again, this restrains UMass from acting.
The majority ignores these effects on UMass. Without explanation, the majority asserts that UMass will only be “more or less affected by the decision” and that transfer of the Tuschl II patents to UUtah will “not deplete the state treasury.” Maj. Op. at 1324. This is incorrect. A correction of inventorship by the PTO will give UUtah an ownership interest in the Tuschl II patents by operation of law and dilute or revoke UMass’s property interest. Indeed, as the majority also recognizes, UU-tah expressly asks the court to order the reassignment of the patents to UUtah. The central effect of a judgment in UU-tah’s favor will be to deplete the assets of the current owners of the Tuschl II patents, one of whom is UMass. UMass is thus the real party in interest in this case.
This is a dispute between two state universities over who owns a valuable patent portfolio — a dispute over property ownership. As undesirable as it may be, we are bound to follow the plain language of § 1251(a): “The Supreme Court shall have original and exclusive jurisdiction of all controversies between two or more States.” It is up to the Supreme Court to decide if it wants to exercise its exclusive jurisdiction over this controversy. We should not contort the statute to avoid a perceived injustice[2] that would result if the Court declined to exercise jurisdiction over UUtah’s claims.
UUtah initiated an action that seeks to obtain UMass’s interest in the Tuschl II patents. That is a controversy between two States and can only be brought in the Supreme Court. Accordingly, we should reverse the district court’s decision that it had jurisdiction over UUtah’s claims against the UMass Officials.
II. Indispensable Party
The majority’s holding that UMass is not an indispensable party to this action is incorrect. We have held that when a plaintiff brings a declaratory judgment action seeking to invalidate a patent or hold it not infringed, the patentee is both a necessary and indispensable defendant in that action. A123 Sys., Inc. v. Hydro-Quebec, 626 F.3d 1213, 1217-19, 1220-22 (Fed.Cir.2010); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1094 (Fed.Cir.1998). It would be nonsensical to suggest that all patent owners must be joined in a suit seeking to invalidate the patent, but they need not be joined in a suit over patent ownership. Indeed, § 256(b) requires a court, before it orders a correction of inventorship, to provide “notice and hearing of all parties concerned,” i.e., those with an “economic stake” in the patent. Chou, 254 F.3d at 1359-60. We should apply our general rule that all co-owners must be joined in an action that affects their patent. See Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1467 (Fed.Cir.1998).
The majority instead holds that UMass is not an indispensable party because UU-tah joined “all of the Tuschl Patent owners except UMass,” each of whom are “jointly represented by legal counsel.” Maj. Op. at 1327. It is not enough that UMass and the named defendants “share the same overarching goal” of defeating UUtah’s in-ventorship and ownership claims. A123 Sys., 626 F.3d at 1221 (holding that absent patentee was an indispensable party when *1332 the named party had “overlapping” but not “identical” interests). ■
The majority deviates from our longstanding requirement that all patent owners be joined, citing an exception created in Dainippon Screen Manufacturing Co. v. CFMT, Inc., 142 F.3d 1266 (Fed.Cir.1998). It is true that, like Dainippon Screen, the named defendants here are represented by common counsel. But the majority omits the “highly relevant” facts from Dainippon Screen — the absent party was a wholly-owned subsidiary of the named party and was created by the named party to enforce the patents-in-suit. 142 F.3d at 1267-68, 1272-73. We allowed the suit to go forward because “the parties’ interests in the asserted patents were not just common, but identical.” A123 Sys., 626 F.3d at 1221 (discussing Dainippon Screen).
There is no party in this suit which represents UMass’s interest in the Tuschl II patents. Other defendants also have an interest in the patents, but they do not represent UMass’s interest. Indeed, their interests may well diverge. For example, the non-UMass defendants may choose to settle with UUtah in a way that diminishes UMass’s rights, such as stipulating that Dr. Bass is the sole inventor of the Tuschl II patents in exchange for ownership interests in the patents. That risks extinguishing UMass’s rights to the patents without UMass participating in the lawsuit.
The majority further claims that defendant Alnylam can represent UMass’s interest because UMass “handed sole and exclusive control of this suit over to Alny-lam.” Maj. Op. at 1328. That right, however, is conditional. If there is a conflict of interest, Alnylam loses its right to control UMass’s defense. Id. The agreement thus contemplates that Alnylam and UMass may not have identical interests. Because UMass does not have identical interests with any of the named defendants, it is an indispensable party in this case. I dissent from the majority’s contrary holding.

. The majority baldly asserts that issues of patent ownership and inventorship are not sufficiently grand 'for the Supreme Court to resolve in the first instance. That is not our decision to make. It is for the Supreme Court to itself decide. And I point out that Universities earn over a billion dollars annually from licensing their inventions. Universities Report $1.8-Biltion in Earnings on Inventions in 2011, The Chronicle of Higher Education, http://chronicle.com/article/ University-Inventions-Earned/133972. Ownership of the Tuschl II patents has significant consequences for Utah and Massachusetts: the patents "have generated hundreds of millions of dollars in revenue.” J.A. 134.

. We note that Dr. Bass and UUtah could have protected their rights to the invention claimed in the Tuschl II patents without invoking the Supreme Court's exclusive original jurisdiction. Dr. Bass could have filed her own patent application and provoked an interference proceeding at the PTO.